65 F.3d 169
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronnie Lee WILCHER, Petitioner-Appellee,
v.
John JABE, Respondent-Appellant.
 No. 94-2386.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1995.
 
 Before: ENGEL, NELSON, and SUHRHEINRICH, Circuit Judges.
 ENGEL, Senior Circuit Judge.
 
 
 1
 Ronnie Lee Wilcher brings this habeas corpus suit alleging that the state court violated his constitutional right not to be sentenced in an ex post facto manner. He pled guilty in Michigan state court to one count of criminal sexual conduct and one count of armed robbery, and the trial judge sentenced him under the recently revised Michigan guidelines to a term of 18 to 40 years on the first count and a concurrent term of 5 to 20 years on the second. Wilcher appealed his sentence to the Michigan Court of Appeals, which rejected his claim. People v. Wilcher, No. 117879 (Mich.Ct.App. Feb. 14, 1990). After the Michigan Supreme Court denied leave to appeal (People v. Wilcher, No. 88413 (Mich. Nov. 29, 1990)), Wilcher brought this habeas suit. The district court granted the writ, adopting the report of the federal magistrate finding an ex post facto violation. Because the magistrate failed to grant the state court the statutory presumption of correctness, we REVERSE.
 
 I.
 
 2
 On direct appeal and in his habeas petition, Wilcher argued that the trial court violated the Constitution's prohibition on ex post facto punishments by sentencing him using the revised Michigan sentencing guidelines, which became effective after his commission of the crimes. Wilcher based his claim on Miller v. Florida, 482 U.S. 423 (1987), in which the Supreme Court found an ex post facto violation in the application of Florida's revised sentencing guidelines to offenses committed before the guidelines' revision. The Michigan guidelines, unlike Florida's, are promulgated by the Michigan Supreme Court, not by the state legislature. Although the ex post facto clause itself addresses legislative imposition of punishments after the fact, the due process clause of the Fourteenth Amendment prohibits state courts "from achieving precisely the same result by judicial construction." Bouie v. City of Columbia, 378 U.S. 347, 353-54 (1964). Thus Wilcher's ex post facto claims are due process claims.
 
 
 3
 The Michigan Supreme Court, however, has analyzed the Michigan guidelines under Miller and has ruled that because the Michigan guidelines, unlike Florida's, allow the sentencing judge full discretion and act merely as non-binding recommendations, Michigan courts can constitutionally apply revised Michigan guidelines to crimes committed before the revisions. People v. Potts, 436 Mich. 295, 302-03, 461 N.W.2d 647 (1990). On Wilcher's Petition for Habeas Corpus, the federal magistrate to whom this case was referred agreed with the Michigan courts that retroactive use of the Michigan guidelines did not pose the ex post facto problem present in Miller.
 
 II.
 
 4
 However, the magistrate then reached beyond the ex post facto claim brought by Wilcher to discover a different one. The magistrate looked to the trial judge's statements at sentencing and concluded "that the sentencing judge applied the revised guidelines as if they were mandatory and binding upon him in the absence of aggravating or mitigating circumstances. He did not, as he should have under the Potts rationale, treat them as a non-binding recommendation." Mag.Op. 7-8. This misunderstanding, held the magistrate, brought this case under Miller despite the guidelines' own correctness. Thus, the magistrate found an ex post facto violation by holding that the trial judge incorrectly believed himself bound by the guidelines.
 
 
 5
 We note first that it seems Wilcher never presented this ex post facto claim on direct appeal. As a result, this claim may not be exhausted, as it must be before federal habeas corpus review is permitted. 28 U.S.C. Sec. 2254(b). "A claim cannot be 'exhausted,' strictly speaking, without its substance having been 'fairly presented' to the state court." Ferguson v. Knight, 809 F.2d 1239, 1241 (6th Cir.1987) (citations omitted). If Wilcher has waived this claim in state court by his procedural default in failing to bring it earlier with his direct appeal, that default likewise bars habeas review unless Wilcher can present "cause and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Wilcher has made no attempt to meet the cause and actual prejudice standard. Nor do we believe he can meet it, since the parties agree that if Wilcher is sent back to state court for resentencing, the trial judge will probably impose the same sentence again. Since we find that the magistrate erred in his conclusions, however, we will reach the merits of this claim without further discussing the exhaustion and default issues, which were not addressed by the parties.
 
 
 6
 The state does argue that the magistrate and the district court improperly created new constitutional law in a habeas case, as the Supreme Court prohibited federal courts from doing in Teague v. Lane, 489 U.S. 288 (1989). The parties hotly dispute whether the district court developed new law in adopting the magistrate's conclusion that the sentencing judge committed a due process ex post facto violation in applying otherwise proper guidelines while incorrectly believing them to be mandatory rather than discretionary. The Supreme Court stated that "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." Teague, 489 U.S. at 301. We agree with the state that Miller v. Florida did not "dictate" the magistrate's finding of unconstitutionality in this very different situation, discussed neither explicitly nor impliedly by the Court in Miller. Again, however, our disposition of this case need not rest on our Teague analysis.
 
 III.
 
 7
 We find that the magistrate's crucial error was in according insufficient deference to the state court and its proceedings. "Petitioner and his attorney were present at the sentencing proceedings and were both given an opportunity to make statements. Such a proceeding carries with it a statutory presumption of correctness. 28 U.S.C. 2254(d)." Faught v. Cowan, 507 F.2d 273, 275 (6th Cir.1974), cert. denied, 421 U.S. 919 (1975). The language used by the judge at sentencing does not demonstrate error clearly enough to overcome this presumption of regularity.
 
 
 8
 The magistrate based his belief in the trial judge's misunderstanding on that judge's statement at sentencing: "Unless there are aggravating circumstances, or mitigating circumstances, I must not deviate from those guidelines." Quoted at Mag.Op. 7. Wilcher further quotes from the earlier hearing at which he pled guilty and during which the judge said, "the court must and should stay within [the guidelines] unless there are compelling reasons either to give him less than the minimum or circumstances that would warrant giving him a greater sentence than that."
 
 
 9
 We consider the judge's entire colloquy, however, in determining whether he properly understood the guidelines. Each of the above statements, while indicating to some extent that the judge considered the guidelines binding, is preceded by a statement demonstrating the judge's comprehension of his own discretion. At the plea hearing, defense counsel stated that Wilcher was to be sentenced within the recommended revised guideline range. The judge replied:
 
 
 10
 Well, sentencing is an area that's left exclusively to the Court....
 
 
 11
 The guidelines are certainly a factor that counsel no doubt has advised his client, that the court must and should stay within unless there are compelling reasons either to give him less than the minimum, or circumstances that would warrant giving him a greater sentence than that.
 
 
 12
 And there's no way that I could do it without having that report done ahead of time.
 
 
 13
 So if [staying within the guideline recommendations is] a condition of this plea in addition to getting two of these charges dismissed, the court would have to reluctantly reject it because I couldn't bargain the sentence at this time.
 
 
 14
 Plea Transcript (emphasis added).
 
 
 15
 Similarly, at sentencing the judge made comments indicating his awareness that the guidelines were merely discretionary as well as comments indicating the opposite.
 
 
 16
 Sentencing has now been restricted in great amounts by the influence of public sentiment, the legislature, and Supreme Court. And so the Court must impose sentence within certain limits.
 
 
 17
 And in this case, as you know, and I suppose everybody knows now, there are guidelines that are given to this court to which I should confine my sentence to the minimum end. The guidelines ... say for this first degree criminal sexual conduct ... I should impose a sentence somewhere between a minimum of ten years and a minimum--a maximum of twenty-five years on the minimum end.
 
 
 18
 On the armed robbery, the sentencing guidelines recommend that I must sentence you somewhere between five and fifteen years on the minimum end....
 
 
 19
 Unless there are aggravating circumstances, or mitigating circumstances, I must not deviate from those guidelines. However, I am given the discretion to sentence within those limits from the high to the low end.... [The judge discusses mitigating factors.]
 
 
 20
 I have considered the recommendation of the Probation Department as well in this case, which recommends that a sentence be within those guidelines limits as well. I will not go outside, I will not go under [the guidelines' limits] but the judgment and sentence of the court will be after taking all of these factors into consideration, and basing my sentence on the guidelines and the fact that you've admitted to it, it's the minimum sentence of this court that you be incarcerated ... for a minimum period of eighteen years....
 
 
 21
 Sentencing Transcript (emphasis added).
 
 
 22
 These transcripts do not decisively reveal whether the trial judge fully understood the extent of his discretion under the guidelines. However, in such ambiguous situations federal courts must presume that the proceedings were proper. Accordingly, we accept the italicized language as demonstrating the state judge's understanding of the Michigan guidelines and his full discretion in sentencing using them. We recognize as well that both passages quoted above were colloquies spoken in open court, not prepared or written memoranda, and as such must be expected to use words less precisely than a polished opinion would. We also note that the trial judge had been using the revised guidelines for some five months before sentencing Wilcher, and we refuse to conclude that this state judge failed to understand them on the basis of the above-quoted language. The statements seized upon by the magistrate and by Wilcher might equally reflect a personal commitment by the trial judge to the ideals embodied by the guidelines.
 
 
 23
 Therefore, we REVERSE the district court's grant of the writ of habeas corpus.